IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

**MARYLYN J. HUFFMAN,** an individual

              Plaintiff,

    v.

**SCAPPOOSE SCHOOL DISTRICT NO. 1 J;** and
**KELLY POWELL** an individual,

              Defendants.

Case No. 3:14-CV-00941-MO

OPINION AND ORDER

**MOSMAN, J.**,

This case involves a claim for age discrimination under ORS 659A.030 by Marilyn Huffman ("Ms. Huffman"), an ex-employee of the Scappoose School District ("the District"), against the District and a former Principal ("Mr. Powell"). Defendants have brought a motion for summary judgment. (Def.'s Mot. for Sum. J. [14]). I hereby GRANT Defendants' motion in full on six of the eight claims brought by Plaintiff, and GRANT partial summary judgment on another claim.

## BACKGROUND

Ms. Huffman was employed as a teacher with the Scappoose School District for over twenty-five years. (Huffman Decl. [20] at 3). Ms. Huffman's supervisor was co-defendant Kelly Powell ("Mr. Powell"). Ms. Huffman was reprimanded for calling her students "smart asses" on October 19, 2011. (Vickers Decl. [15] at 13). Ms. Huffman was again reprimanded for calling her students "monkeys" on April 2, 2013. (Vickers Decl. [15] at 15). Ms. Huffman contested that reprimand through the formal grievance procedures available in her employment contract, and

the grievance was expunged from her record. (Vickers Decl. [15] at 20-21). Ms. Huffman alleges

that she was the victim of harassment by Mr. Powell because of her age and that Mr. Powell

threatened her when she filed a complaint with the EEOC. (Huffman Decl. [20] at 4-5). Ms.

Huffman additionally alleges that Mr. Powell implored her to retire to make room for younger

employees (Compl. [1] at 5).

Ms. Huffman was placed on the first "Plan of Assistance" for the period of April 2, 2013,

through June 7, 2013. (Huffman Decl. [20] at 5);(Vickers Decl. [15] at 17). A Plan of Assistance

is a disciplinary measure that includes oversight guidelines and improvement schedules for

teachers. (Vickers Decl. [15] at 17). On June 6, 2013, that Plan was supposedly (and informally)

extended through the summer, and on August 28, 2013, the second Plan of Assistance was

implemented. Ms. Huffman filed a complaint with the EEOC on June 17, 2013. (Huffman Decl.

[22] at 14). On February 18, 2014, the District extended Ms. Huffman's employment contract for

the 2014-2015 school year. (Vickers Decl. [15] at 22). Mr. Powell informed Ms. Huffman that

she had completed the second Plan on March 7, 2014. (Vickers Decl. [15] at 30).  She retired in

July 2014. (Vickers Decl. [15] at 10).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). In determining whether a genuine issue of material fact exists, the court must view all

facts and reasonable inferences in the light most favorable to the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). When "the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted).

## DISCUSSION

Ms. Huffman has brought an action against the District and Mr. Powell with eight separate claims. They are: (1) Age Discrimination under the Age Discrimination in Employment Act ("ADEA"), (2) Retaliation under the ADEA, (3) Willful Violation of the ADEA, (4) Age Discrimination under state law ORS 659A.030, (5) Intentional Infliction of Emotional Distress, (6) Abuse of Process, (7) Intentional Interference with Contractual Relations, and (8) Breach of Contract. For the following reasons, I GRANT summary judgment in full for the Defendants on claims (1), (3), (5), (6), (7), and (8), and I GRANT partial summary judgment for the Defendants on claim (2), and I DENY summary judgment for Defendants on claim (4).

## I.    Age Discrimination: ADEA

To establish a claim for age discrimination (disparate treatment), Ms. Huffman must show: (1) she is a member of a protected class, (2) she was qualified for the position and performing her job according to her employer's expectations, (3) she was subject to adverse employment action, and (4) similarly situated positions outside of her protected class were treated more favorably. *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees,* 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).[1]

---

[1] Although the Ninth Circuit has set a relatively low bar to survive summary judgment, *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1084 (9th Cir. 2008)(noting that "[w]e require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a 'searching inquiry' –one that is most appropriately conducted by the fact-finder, upon a full record"), the evidence in this case fails to create any a factual dispute which could possibly support the fourth element of the action.

Taking these elements one by one, Ms. Huffman has not provided evidence sufficient to overcome summary judgment because she has failed to provide *any* evidence that similarly situated persons outside of her class were treated more favorably.

### A. First Element- Protected Class

On the first element, Ms. Huffman is admittedly a member of a protected class. (Def.'s Mot. for Sum. J. [14] at 5).

### B. Second Element- Performing up to Expectations

On the second element, there is a factual dispute as to whether Ms. Huffman was performing her job according to the District's expectations. If she was not performing up to expectations, then her claim must fail. Defendant argues that by calling her students "monkeys" and "smart asses," Ms. Huffman was not performing up to expectations. (Def.'s Mot. for Sum. J. [14] at 5). However, Ms. Huffman contests the "monkeys" allegation. She claims that she never made that statement (Vickers Decl. [15] at 7) and that the reprimand was expunged from her record. (Pl.'s Resp. [19] at 5). She admits that she said the "smart ass" comment (Pl.'s Resp. [19] at 6), but it occurred over a year before the incident at issue here.

In its reply brief, the District argues that the presence of a factual dispute regarding whether or not Ms. Huffman actually called her students "monkeys" does not create a genuine issue for trial, since it is admitted that she was reprimanded for doing so. (Def.'s Reply [23] at 5). This is incorrect since the existence of a reprimand is not at issue. Rather, the inquiry concerns whether Ms. Huffman was performing according to expectations. If, as Ms. Huffman claims, the second reprimand was undeserved, and she did not in fact misbehave, then a reasonable jury could conclude that she was performing her duties up to expectations. Furthermore, even

assuming arguendo that the first Plan (April 2, 2013 through June 6, 2013) was legitimately based on Ms. Huffman's misbehavior in calling her students "monkeys," that does not foreclose the possibility that her performance met expectations during the probationary period that followed. Ms. Huffman states that "[t]here was nothing that occurred between April 2, 2013, and June 6, 2013, that would justify [Mr. Powell] again extending the plan of assistance." (Huffman Decl. [20] at 8). Therefore, viewing the facts in the light most favorable to Ms. Huffman, a reasonable jury could conclude that Ms. Huffman was performing up to expectations when she was placed on either or both Plans of Assistance.

### C. Third Element- Adverse Employment Action

On the third element, the Ninth Circuit has taken an "expansive" view of adverse employment actions, defining them as actions "that materially affect[] the compensation, terms, conditions, or privileges of . . . employment. We have held that assigning more, or more burdensome, work responsibilities, is an adverse employment action." *Davis*, 520 F.3d at 1089 (internal quotations omitted).[2]

Ms. Huffman focuses on the Plans of Assistance under this count, and alleges that the Plans were a "substantially increased workplace burden." (Pl.'s Response [19] at 7). The exact tasks included keeping a log of all classroom management situations, preparing weekly lesson plans to present to Mr. Powell on each Monday, attending trainings, and observing other classrooms. (Pl.'s Response [19] at 7). The Defendants do not deny these allegations, but insist that the Plans were justified for "improvement" reasons. (Def.'s Reply [23] at 6). Without

---

[2] Note, however, that the standard for what constitutes an adverse employment action in a discrimination claim is "not coterminous" with the standard in a retaliation claim (discussed below). *See Burlington Northern & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

dispositive evidence to the contrary, a reasonable jury could conclude that Ms. Huffman was subjected to an increased work burden from the Plans. Therefore, Ms. Huffman has provided enough evidence to overcome summary judgment for this element.

### 1. Constructive Discharge

Ms. Huffman also alleges that she was constructively discharged under this count. Constructive discharge is not an independent action, but rather satisfies the adverse employment element for an age discrimination claim. A plaintiff may sue for constructive discharge if the working conditions become so intolerable that a reasonable person in the plaintiff's position would have resigned, and those conditions were caused by discriminatory behavior based on the plaintiff's protected class. *See Pa. State Police v. Suders*, 542 U.S. 129, 142-43 (2004). In *McGanty v. Staudenraus*, the Oregon Supreme Court explained that a constructive discharge is present in Oregon if:

> (1) the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions *or* knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions.

*McGanty v. Staudenraus*, 321 Or. 532, 557 (1995). In this case, Ms. Huffman has not provided enough factual detail to satisfy the second and fourth elements of the *McGanty* standard. This is because she has not alleged facts that would lead a reasonable person in her position to resign, and even if she did, the timeline is such that those facts did not cause her to retire early. The Ninth Circuit has stated that "[w]e set the bar high for a claim of constructive discharge" to encourage employees to address discrimination before they depart. *Poland v. Chertoff*, 494 F.3d

1174, 1184 (9th Cir. 2007) (citing *Thorne v. City El Segundo*, 802 F.2d 1131, 1134 (9th Cir. 1986)). Even taking all of the evidence in her favor, Ms. Huffman has failed to establish a claim for constructive discharge.

This is primarily because of the timing of Ms. Huffman's retirement. In *Chertoff*, the plaintiff remained employed for three months under allegedly intolerable conditions. The Ninth Circuit ruled that "[a]s a matter of law, these are not the actions of someone who finds his working conditions so intolerable that he felt compelled to resign." *Chertoff*, 494 F.3d at 1185. S*ee also Manatt v. Bank of America*, 339 F.3d 792, 804 (9th Cir. 2003) (noting that a racially offensive work environment which ended a month prior to plaintiff's departure could not support a constructive discharge), *Montero v. AGCO Corp*., 192 F.3d 856, 861 (9th Cir. 1999) (noting that sexual harassment which ceased three to four months prior to plaintiff's departure could not support a constructive discharge).

In this case, Ms. Huffman retired four months after the allegedly discriminatory Plan of Assistance was completed (March 2014 – July 2014), one month after Mr. Powell had retired (June 2014 – July 2014), and five months after she received a twelve month contract extension (February 2014 – July 2014). Under the Ninth Circuit's reasoning in *Chertoff, Manatt*, and *Montero,* those time delays cannot support a claim for constructive discharge.

As such, summary judgment is appropriate for the District and Mr. Powell on the theory of constructive discharge. This, however, does not mean that Ms. Huffman cannot proceed with her claim for age discrimination under the ADEA. But just because Defendants' alleged conduct in this case does not support constructive termination does not mean that it was not an adverse employment action for the purposes of the third element.

### D.  Fourth Element- Similarly situated Persons treated more favorably.

The final element to Ms. Huffman's age discrimination claim under the ADEA is that similarly situated persons were treated more favorably than she was because of her age. Ms. Huffman claims that Mr. Powell had harassed three older employees before her, ultimately resulting in two others retiring. (Huffman Decl. [20] at 4). But these employees' names and information have not been provided to the Court. No evidence whatsoever has been provided to demonstrate the experience of younger employees under Mr. Powell. This raises the issue of whether Ms. Huffman has provided enough evidence that similarly situated individuals ("comparators") were treated more favorably. It is my opinion that she has not done so.

The Ninth Circuit has held that plaintiffs "must demonstrate, at the least, that they are similarly situated to those employees [comparators] in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006).[3] Since Ms. Huffman has not specifically identified any similarly situated individuals who were treated better than her, she is unable to subsequently demonstrate their fitness as comparators. The lack of any concrete comparator means that Ms. Huffman cannot satisfy the requirements from *Moran*. Even viewing the evidence in Ms. Huffman's favor, a reasonable jury could not find that similarly situated individuals were treated better than Ms. Huffman.

For the reasons specified above, I grant summary judgment for the Defendants on the count of Age Discrimination under the ADEA.

---

[3] The fitness of comparators is a source of much inquiry. In *Ballard v. Tri-County Metro. Transp. Dist. Of Or.*, Judge Papak examined five specific "comparator" individuals in deciding whether the plaintiff had been treated unfairly based on her race. 2011 U.S. Dist. LEXIS 38131, *69, 2011 WL 1337090, *21 (D. Or. Apr. 7, 2011). In *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), the Ninth Circuit examined two specific comparators in deciding whether the plaintiff had been treated unfairly based on his race. In this case, the Defendants are unable to challenge the fitness of a comparator because none have been provided or specifically identified.

II.    **Retaliation under the ADEA**

Retaliatory conduct "takes the form of . . . actions that clearly inflict tangible, employment-related harm upon the employee." *Hashimoto v. Dalton*, 118 F.3d 671, 675 (9th Cir. 1997).[4] To establish a claim of retaliation, a plaintiff must prove that: (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action. *Villiarimo v. Aloha Is. Air, Inc*., 281 F.3d 1054, 1064 (9th Cir. 2002); *see also Steiner v. Showboat Operating Co*., 25 F.3d 1459, 1464 (9th Cir. 1994). If and when a plaintiff has asserted a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its conduct. *Diaz v. Eagle Produce, Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir. 2000). Based on this analysis, I hereby grant Defendants' motion for summary judgment on one of Ms. Huffman's theories of retaliation, and deny it with regard to the other two theories.

A.  *Protected Activity*

Ms. Huffman's complaint with the EEOC was a protected activity. *Hashimoto*, 118 F.3d at 675.

B.  *Adverse Employment Actions*

Ms. Huffman claims that the second Plan of Assistance, the allegedly fraudulent evaluation, and the alleged harassment were all three implemented by Mr. Powell in retaliation

---

[4] For retaliation claims under the ADEA such as this one, Title VII cases are relevant because "the ADEA anti-retaliation provision is 'parallel to the anti-retaliation provision contained in Title VII,' and . . . 'cases interpreting the latter provision are frequently relied upon in interpreting the former.'" *Hashimoto,* 118 F.3d at 675 n.1 (quoting *Passer v. Am. Chem. Soc'y*, 935 F.2d 322, 330 (D.C. Cir. 1991)).

for her complaint. This creates three separate theories of retaliation to evaluate for summary judgment. (1) "The second plan of assistance was in retaliation for plaintiff's refusal to resign in response to the first plan, and retaliation for her complaint of age discrimination." (Compl. [1] at 7). (2) "The fraudulent negative evaluation was also in retaliation to plaintiff's refusal to resign." (Compl. [1] at 7).  (3) "In addition, the hostile work environment and harassment that defendant Powell put plaintiff through was in retaliation . . . " (Compl. [1] at 7).

This turns the question to whether Mr. Powell's actions in those three theories are, in fact, "adverse employment actions." The Ninth Circuit has established that "[t]o succeed on a wrongful-retaliation claim, a plaintiff must show, in the first instance, that he has suffered an adverse employment action." *Nunez v. City of Los Angeles*, 147 F.3d 867, 874-75 (9th Cir. 1998) (citations omitted). Adverse employment actions are defined, as a threshold matter, as conduct "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).

Examples of adverse employment actions are "termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Under *Brooks*, therefore, the allegedly fraudulent evaluation by Mr. Powell meets the threshold for an adverse employment action. Taking the facts in the light most favorable to Ms. Huffman, a reasonable jury could find that Mr. Powell's 2012–2013 performance evaluation of Ms. Huffman was fraudulent. (Huffman Decl. [22] at 35). The second Plan of Assistance also qualifies as an "undeserved negative performance review," since it identifies four specific domains of incompetence (Planning, Classroom Environment, Instruction, and Professional

Responsibilities), and implements an improvement schedule for those deficiencies. (Vickers Decl. [15] at 26).

Ms. Huffman alleges that Mr. Powell threatened her with "public disgrace" (Huffman Decl. [20] at 4), "embarrassed and humiliated" her without any cause (Huffman Decl. [20] at 7), caused her to leave the work site on at least four occasions (Huffman Decl. [20] at 7), and confronted her with a "severe and angry demeanor" that caused her to cry at work. (Huffman Decl. [20] at 7). She also alleges that he "responded to the obvious injury that he was inflicting" by accused her of "being unprofessional." (Huffman Decl. [20] at 7). In *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1109 (9th Cir. 1998), the Ninth Circuit found that the plaintiff's allegations that a supervisor had regularly harassed her throughout her employment and laughed at her complaints to him raised a genuine factual issue sufficient to overcome summary judgment. Viewing Ms. Huffman's allegations of harassment favorably, a reasonable jury could similarly conclude that she also experienced an adverse employment action.

### C.  Causal Link

The last piece of an adverse employment action is a causal link between the protected activity and the adverse employment action. Without causation, the remaining two elements do not constitute an actionable offense. In employment retaliation cases like this one, causation may be inferred from the circumstantial evidence of (1) an employer's knowledge that the plaintiff engaged in protected activity, and (2) the time interval separating the protected activity and allegedly adverse action. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (quoting *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 731-32 (9th Cir. 1986)).

### 1.   Defendant's Knowledge of the Protected Activity

Here, Mr. Powell presumably knew about Ms. Huffman's EEOC complaint about his discriminatory behavior. Ms. Huffman alleges that he knew (Huffman Decl. [20] at 6), and no evidence has been provided to negate this inference. This inference applies to all three alleged retaliatory acts, and therefore the only remaining issue is the time interval separating those alleged acts and Ms. Huffman's protected activity.

### 2.   Time Interval between the Protected Activity and the Adverse Action

Ms. Huffman's EEOC complaint of June 17, 2013 (Huffman Decl. [22] at 16) is separated from the second Plan of Assistance (August 28, 2013) by two-and-a-half months. In *Miller*, the protected activity and alleged adverse action were separated by two months, *Miller*, 797 F.2d at 731-32, and in *Yartzoff*, the separation was just under three months, *Yartzoff*, 809 F.2d at 1375. Hence, Ms. Huffman's allegation of retaliation via the second Plan of Assistance appears to satisfy the initial burden of a causal relationship.

Regarding Ms. Huffman's allegation that Mr. Powell harassed her in retaliation for her EEOC complaint, Ms. Huffman has not provided *any* factual detail regarding specific incidents of harassment. No dates are provided to anchor the analysis at any point in time whatsoever. It is therefore impossible for the Court to ascertain whether the alleged harassment was perpetrated in retaliation for her protected conduct. As such, viewing the facts in Ms. Huffman's favor, a causal link between any two incidents cannot be established by a reasonable jury. Summary judgment is granted to the District and Mr. Powell on this theory of retaliation.

Finally, the alleged retaliatory fraudulent Performance Evaluation is simply dated "June 2013." (Huffman Decl. [22] at 35). This anchors the conduct within the month of June and

subsequently raises the question as to whether it was issued before or after the June 17, 2013, EEOC complaint. The exact date of the Performance Evaluation may be contested at trial, but at this stage, a material issue of fact exists which is sufficient to overcome summary judgment.

In sum, summary judgment is granted on one of the three theories of retaliation proffered by Ms. Huffman—namely that Mr. Powell retaliated by harassing her. For the remaining two theories, the Court applies a burden shifting analysis.

### D. Burden Shifting

Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory explanation for the action. *Wrighten v. Metro. Hosp., Inc.*, 726 F.2d 1346, 1354 (9th Cir. 1984) (citing *Cohen v. Fred Meyer*, 686 F.2d 793, 796 (9th Cir. 1982). To carry that burden, an employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Miller*, 797 F.2d at 731 (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 257 (1981)). As discussed above, Ms. Huffman has established a prima facie case for retaliation under two potential theories, which shifts the inquiry to whether the District and Mr. Powell have provided evidence of non-discriminatory motivations for the second Plan of Assistance and the June 2013 Performance Evaluation.

According to Defendants, the second Plan of Assistance was implemented to "improve Plaintiff's teaching" (Def.'s Reply [23] at 8), and that "the reasons for the second Plan of Assistance are articulated in the Plan." (Def.'s Mot. for Sum. J. [14] at 7). In contrast, Ms. Huffman contends that "No evidence is offered by defendants to justify the August [second] Plan

of Assistance, and it was designed to deter [Ms. Huffman] from returning to work in the fall."
(Pl.'s Resp. [19] at 8).

The listed reasons for implementing the second Plan are: Demonstrating knowledge of
content and pedagogy, Creating an environment of respect and rapport, Establishing a culture of
learning, Engaging Students in Learning, Demonstrating flexibility and responsiveness,
Reflecting on teaching, Maintaining accurate records, and Growing and developing
professionally. (Vickers Decl. [15] at 25-27). The Plan simply states that "Mrs. Huffman has
shown deficiencies" in the performance standards listed above. These vague generalities,
however, do not point to a specific motivation for placing Mrs. Huffman on the second Plan of
Assistance. Without some evidence of a real deficiency, general goals of improvement could
easily be abused as empty justification for discriminatory conduct. Defendants have not provided
any evidence of conduct that would independently justify the second Plan. Therefore, Defendants
have not carried their burden and summary judgment is not appropriate on Ms. Huffman's
retaliation claim for the second Plan of Assistance.

Regarding the June 2013 Performance Evaluation, Ms. Huffman alleges that it was
unwarranted and retaliatory. (Vickers Decl. [15] at 33). The District and Mr. Powell have not
provided any factual matter to support the notion that Ms. Huffman's teaching performance had
dramatically suffered. In fact, the allegedly fraudulent Evaluation is not even addressed in
Defendants' briefing, and no further evidence has been provided to demonstrate the propriety of
the performance Evaluation. Since Defendants have failed to carry their burden of providing a
non-discriminatory rationale for the Evaluation, summary judgment is not appropriate.

In sum, I grant Defendants' motion for summary judgment for Ms. Huffman's
harassment theory of retaliation, and I deny their motion for Ms. Huffman's  theories of

retaliation with respect to the second Plan of Assistance and the June 2013 Performance Evaluation.

### III.    Willful Violation of ADEA

Since summary judgment is appropriate for the ADEA Age Discrimination Claim discussed above, summary judgment is also granted to the Defendants on this count.

### IV.    State Law Age Discrimination Claim

Defendants insist that summary judgment is appropriate for Mr. Powell because Ms. Huffman's state law claim can only apply to her employer. (Mot. for Sum. J. [14] at 7). This reading of the statute is incorrect. Ms. Huffman can bring a state law claim against Mr. Powell in addition to the District. Under ORS 659A.030, it us unlawful to discriminate due to race, color, religion, sex, sexual orientation, national origin, marital status or age. The statute provides that:

(1)  It is an unlawful employment practice :

[. . .]
 (b) For an employer, because of an individual's . . . age if the individual is 18 years of age or older . . . to discriminate against the individual in compensation or in terms, conditions or privileges of employment.
[. . .]
(g)  For any person, whether an *employer or an employee*, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so.

ORS 659A.030 (emphasis added). Under 659.030(1)(g), Mr. Powell (an employee) and the District (the employer) can both be held liable for conduct in violation of the statute. Therefore, summary judgment is not appropriate for Mr. Powell based purely on the statute's language.

### A.  Notice of Tort Claim

Defendants' motion for summary judgment contended that Ms. Huffman failed to satisfy the timely notice requirements under ORS 30.275(2). (Def.'s Mot. for Sum. J. [14] at 7-8). That statute requires that a public body be given notice of a tort claim within 180 days of the alleged injury. Plaintiff's response included a copy of the notice that was provided on September 27, 2013. (Schreiner Decl. [21] at 4). Defendants argue further that Ms. Huffman's complaint was invalid for not including a reference to the notice given. (Def.'s Reply [23] at 9). Defendants stake their argument on *Brinkley v. Oregon Health Science Univ.*, 766 P.2d 1045 (Or. Ct. App. 1988), where the trial court's denial of the defendant's motion to dismiss was overturned on appeal. The court held that:

> "Pleading and proof of notice sufficient to satisfy the requirements of ORS 30.275 are a mandatory requirement" under OTCA. *Beaver v. Pelett*, 299 Or. 664, 671, 705 P.2d 1149 (1985), quoting *Urban Renewal Agency v. Lackey*, 275 Or. 35, 40, 549 P.2d 657, 660. Plaintiff had to plead that he gave a notice of [the] claim as required by ORS 30.275. The court, therefore, erred when it denied defendant's motion to dismiss.

*Brinkley*, 766 P.2d 1045, 1949 n.2. Timely notice was provided by Ms. Huffman to the District (Schreiner Decl. [21] at 1). However, Ms. Huffman's complaint does not contain an allegation of notice, as required by *Brinkley*. This raises the question as to whether the District is entitled to summary judgment based on the *Brinkley* rule.

**1.  If Notice is not alleged in the pleadings, ORS 30.275 requires dismissal of the claim, but that does not entitle Defendants to Summary Judgment in this case.**

This Court recognizes the *Brinkley* rule as a binding procedural requirement for plaintiffs bringing a tort claim against a public institution.

The OTCA mandates that no action shall be maintained unless the required written notice of claim is given within 180 days of the acts giving rise to the claims. Ore. Rev. Stat. §

> 30.275(1) and (2)(b). Pleading and proof of notice sufficient to satisfy the requirements of § 30.275 are a mandatory requirement under the OTCA. *Brinkley v. Oregon Health Sciences University*, 94 Ore. App. 531, 537 (1938). Plaintiff had to plead that he gave a notice of claim as required by § 30.275. *Id.* Because Plaintiff failed to do so, his claims based upon the OTCA must be dismissed for failure to state a claim upon which relief may be granted.

*Curtis v. Oregon*, 2013 U.S. Dist. LEXIS 95351, *9-10 (D. Or. July 9, 2013). Based on *Brinkley*, Judge Brown dismissed the plaintiff's claim in *Curtis* with prejudice. "Because it is apparent the deficiencies of Plaintiff's Complaint cannot be cured by amendment, the dismissal is with prejudice." *Curtis*, 2013 U.S. Dist. LEXIS 95351, *13 (original capitalization omitted).

Therefore, the question before this Court is whether the *Brinkley* pleading requirement, as it applies to a motion to dismiss, should determine summary judgment in this case. It is my opinion that it should not. In contrast to the reasoning in *Curtis*, Plaintiff's complaint in this case can be cured with amendment. In *Curtis*, the plaintiff's complaint contained dozens of legal and procedural errors which rendered it unfixable, whereas Ms. Huffman's complaint merely fails to allege that proper notice was in fact given.

Furthermore, the Oregon Supreme Court, the Oregon Court of Appeals, and this Court, have granted similar plaintiffs leave to amend their complaint to comply with the pleading-of-notice requirement of ORS 30.275 before entering a final judgment. *See Urban Renewal Agency of the City of Coos Bay v. Lackey*, 549 P.2d 657, 660 (1976) (approving of the trial court's requirement that the plaintiffs amend their complaint to allege the requisite notice); *Turner v. Multnomah Cnty.*, 2013 U.S. Dist. LEXIS 63146, (D. Or. May 1, 2013) (Judge King noting that the court "will permit plaintiff to amend his complaint to allege actual notice to the [defendants] based on service of the complaint, if he can make those allegations in good faith."); *Harris v. DiIaconi*, 636 P.2d 1005, 1006-07 (Or. Ct. App. 1981) (upholding the trial court granting ten days for the plaintiff to amend his deficient complaint or face dismissal with prejudice).

Since Ms. Huffman did in fact provide adequate notice to Defendants and merely failed to allege in her complaint that such notice was given, I deny Defendants' motion for summary judgment based on *Brinkley*, and grant Ms. Huffman leave to amend her complaint to comply with ORS 30.275.

**2.    *Erie* suggests that the *Brinkley* rule should not be applied in this instance because it is not outcome determinative in the traditional sense.**

Since the requirement from *Brinkley* is an Oregon procedural requirement, a question arises as to whether it should apply to Ms. Huffman's state-law action in federal court. In *Erie R.Co. v. Tompkins*, the Supreme Court laid out a rubric for district courts to follow in determining which law should apply. 304 U.S. 64, 78 (1938).

The first question in any *Erie* analysis is whether the law at issue is procedural or substantive. The rule from *Brinkley* is a procedural rule. In *Guaranty Trust Co. of N.Y. v. York*. 326 U.S. 99, 109 (1945), the Supreme Court held that state-law procedural rules should only be applied if they significantly affect the outcome of the proceedings. This has been called the "Outcome-Determinative Test." In that case, the question was whether to apply the state-law statute of limitations. Holding that the state-law limitations period should apply, the Court stated that "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Id*. 326 U.S. at 109.

The *Brinkley* rule to this case is not outcome-determinative in the same sense as the limitations period at issue in *Guaranty Trust*. In that case, the limitations period was determinative regardless of when it was raised during litigation. Here, if the District had filed a motion to dismiss at the beginning of litigation based on Ms. Huffman's inadequate complaint under *Brinkley*, the Court would have dismissed the complaint with leave to re-plead. At that

stage, the requirements of the *Brinkley* rule would *not* have been outcome-determinative.

Therefore, *Brinkley* is distinct from those procedural rules which are outcome-determinative

independent of the temporal or procedural posture of the case. Defendants in this case should

have raised this issue earlier in the litigation, but their delay in raising it does not now entitle

them to a result (summary judgment) which would have been unavailable had they raised it in a

timely manner.

 As such, I deny Defendants' motion for summary judgment based on *Brinkley*, and grant

Ms. Huffman leave to amend her complaint to comply with ORS 30.275.[5]


## V. Intentional Infliction of Emotional Distress

 The tort of intentional infliction of emotion distress consists of three elements: (1) the

defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts

were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts were

outrageous and constituted an extraordinary transgression of the bounds of socially tolerable

conduct. *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995) (quoting *Sheets v. Knight*, 779

P.2d 1000, 1010 (Or. 1989)). Ms. Huffman's action cannot support the third element in this

analysis and therefore summary judgment is appropriate for the Defendants.


### A. *First Element- Intent*

 On the first element, the requisite intent exists when the defendant either "desires to

inflict severe emotional distress" or "knows that such distress is certain, or substantially certain,

---

[5] Alternatively, since the procedural rule from Brinkley is not outcome-determinative, *Erie* requires that the Federal Rules of Civil Procedure govern this claim. The Federal Rules of Civil Procedure do not require a plaintiff to plead that notice was provided, and therefore the District is not entitled to summary judgment based solely on *Brinkley*.

to result from [such] conduct." *McGanty*, 901 P.2d at 853 (quoting Restatement (Second) of

Torts § 46 (1965)). The existence of an employment relationship, such as that between Ms.

Huffman and the Defendants, does not reduce the level of intent required. *Id*. at 855.  In this

case, Ms. Huffman alleges that Mr. Powell verbally expressed his intention to "put [her] through

an emotional ordeal" if she chose to oppose his conduct. (Huffman Decl. [20] at 7). Ms. Huffman

claims that Mr. Powell's intent was to cause severe emotional harm and force her to retire.

(Huffman Decl. [20] at 6). Viewing this evidence in Ms. Huffman's favor, a reasonable jury

could conclude that Mr. Powell acted with the requisite intent.

### B. Second Element- Reasonable Probability of Causality

On the second element, a plaintiff must provide evidence that the alleged conduct caused

the severe emotional distress with a "reasonable probability." *Sims v. Dixon*, 355 P.2d 478, 480

(Or. 1960). Taking the evidence in Ms. Huffman's favor, the Plans of assistance, the allegations

of harassment, and allegedly fraudulent evaluation could reasonably have caused the alleged

distress Ms. Huffman has asserted. Ms. Huffman complains that she had to leave her work site

on at least four occasions because Mr. Powell's conduct made her feel nauseated and ill

(Huffman Decl. [20] at 7), and that the "hostility" he created caused her to seek medical care and

antidepressant medication (Huffman Decl. [20] at 7), to be humiliated (Huffman Decl. [20] at 7),

to lose her love for teaching (Huffman Decl. [20] at 7), and eventually to resign prematurely.

Taking the evidence in the light most favorable to Ms. Huffman, a jury could find a reasonable

probability that Mr. Powell's alleged actions caused Ms. Huffman's alleged distress.

//

//

### C.  *Third Element- Outrageousness*

On the third element of outrageous conduct, whether a defendant's conduct constitutes an "extraordinary transgression of the bounds of socially tolerable conduct is a question of law." *See Harris v. Pameco Corp.*, 12 P.3d 524, 528 (Or. Ct. App. 2000); *see also House v. Hicks*, 179 P.3d 730, 736 (Or. Ct. App. 2008) ("Whether [a defendant's] conduct is an extraordinary transgression is a fact-specific inquiry, to be considered on a case-by-case basis, based on the totality of the circumstances."). As a question of law, the Court's inquiry requires specific facts to evaluate the merit of the claim. In this case, there is insufficient evidence to support a finding of outrageousness, even when the available evidence is viewed in Ms. Huffman's favor. Evidence of outrageousness must be specific, and provide details about incidents, including frequency or duration, as well as qualitative descriptions of the conduct and the content of the comments. *See Cantua v. Creager*, 7 P.3d 693, 702 (Or. Ct. App. 2000) (holding that a plaintiff's general statements of impropriety and harassment could not support a finding of outrageousness). Ms. Huffman did not provide sufficient factual detail, either qualitative or quantitative, to support a finding of outrageousness. Her allegations of "harassment," "intimidation," "angry confrontation," and that she "had to leave [her] work site on at least four occasions" (Huffman Decl. [20] at 7) do not provide enough specificity or context for a jury to deliberately decide that Mr. Powell's specific behavior exceeded the bounds of social toleration. Even if these vague allegations are accepted, they cannot support the element of outrageousness.

Additionally, the Plans of assistance are themselves not the type of conduct which constitutes outrageousness. "[E]xcessive supervision and unjustified reprimands, even if proved, cannot amount to an 'extraordinary transgression of the bounds of socially tolerable conduct.'" *Snyder v. Sunshine Diary*, 742 P.2d 57, 58 (Or. Ct. App. 1987) (citations omitted). Even when

viewed in Ms. Huffman's favor, the Plans of assistance are precisely that—excessive supervision based on an unjustified reprimand.  Therefore, the third element of this tort cannot be supported, and I therefore grant summary judgment to Mr. Powell on this count.

### VI.    Abuse of Process

Ms. Huffman claims that the Plan of Assistance was an abuse of process by Mr. Powell and the District. (Compl. [1] at 9). Summary judgment for Defendants is appropriate on this Count because abuse of process is related to the Court's process, not the District's process. "Abuse of process is the perversion of a *legal* procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause." *Rocky B. Fisheries, Inc. v. North Bend Fab. & Mach., Inc.,* 676 P.2d 319, 327 (Or. Ct. App. 1984) (emphasis added) (citing *Larsen v. Credit Bureau,* 568 P.2d 657, 658 (Or. 1977). Regardless of how the facts are viewed, the District's internal employee monitoring and improvement program is not the Court's process. Defendants' motion for summary judgment is therefore granted.

### VII.    Intentional Interference with Contractual Relations

To state a claim for intentional interference with economic relations, a plaintiff must establish the following six elements: (1) the existence of an employment relationship, and an (2) intent to interfere with that relationship, (3) by a third party, (4) with improper motive or means, (5) which actually causes harm to the employment relationship, and (6) the plaintiff suffered damages.  *McGanty v. Staudenraus,* 901 P.2d 841, 844 (Or. 1995) (en banc) (citing *Straube v. Larson,* 600 P.2d 371, 374-75 (Or. 1979)).  *See also Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1371-73 (Or. 1978), *Welch v. Bancorp Mgmt. Servs.,* 675 P.2d 172, 176-79 (Or. 1983). I examine each element in-turn.

### A. *First Element - Presence of an Employment Relationship*

On the first element, an employment relationship certainly existed between the District and Ms. Huffman. (Vickers Decl. [15] at 3, 22).

### B. *Second Element- Intent to Interfere*

On the second element, Ms. Huffman alleges that Mr. Powell intended to force her to resign via his fraudulent evaluation which "permanently ruined [her] prospects for future employment." (Huffman Decl. [20] at 5). Ms. Huffman also claims that Mr. Powell verbally expressed his intention to "put [her] through an emotional ordeal" if she chose to oppose his conduct. (Huffman Decl. [20] at 7). The Ninth Circuit applies the intent element flexibly, requiring only that the defendant have knowledge that the contractual interference is substantially certain. *Straube,* 600 P.2d at 374. Taking those allegations in the light most favorably to Ms. Huffman, a jury could reasonably conclude that Mr. Powell possessed the requisite intent to sabotage her employment relationship with the District.

### C. *Third Element – Third Party*

Whether the third element is satisfied depends on the propriety of the disciplinary measures taken. This is because a supervisor who acts within the scope of his employment cannot be a third party to satisfy this element, but a supervisor who acts outside the scope of his employment can. *See McGanty*, 901 P.2d at 845-46. If Mr. Powell was justified in placing Ms. Huffman on the Plans of assistance, then he was acting within his employment. A genuine factual dispute therefore exists on this issue. Viewing the facts in Ms. Huffman's favor, a jury

could reasonably conclude that Mr. Powell was not acting within the scope of his employment, and was therefore a third party for the purposes of this tort.

### D. Fourth Element – Improper Motive

On the fourth element, Ms. Huffman alleges that Mr. Powell was motivated to purge the oldest teachers. (Huffman Decl. [20] at 1); (Compl. [1] at 3). The District contests this point, arguing that there was no improper motive, and that Mr. Powell was merely acting within the scope of his duties as an administrator. (Def.'s Mot. for Sum. J. [14] at 11). This is a factual dispute based on the parties' assertions. Viewing the facts in Ms. Huffman's favor, a reasonable jury could conclude that Mr. Powell had an improper motive in imposing the Plans on Ms. Huffman.

### E. Fifth Element- Causal Relationship between Harm to Employment Relationship and Alleged Conduct.

The fifth element requires a causal link between the alleged harm to the employment relationship and the alleged conduct. "The salient inquiry in any interference claim," the Oregon Supreme Court has noted, "is whether defendant's tortuous conduct damaged plaintiff's economic or contractual relationship." *Lewis v. Oregon Beauty Supply Co.*, 733 P.2d 430, 434 (Or. 1987), *abrogated by McGanty*, 901 P.2d at 848-49.

Oregon defines harm broadly and termination of the employee is not necessary. Ms. Huffman alleges that the Plans of Assistance made her job more difficult and constituted a "substantially increased workplace burden." (Pl.'s Resp. [19] at 7). Defendants do not contest the requirements of the Plan. Viewing the facts in the light most favorable to Ms. Huffman, a reasonable jury could conclude that there was a causal relationship between Mr. Powell's actions and the harm that she experienced (increased burden) in her employment relationship with the District.

### F. Sixth Element – Damages

The sixth element requires that a plaintiff suffered damages as a result of the harm caused to their employment relationship. In this case, the evidence is insufficient to support a damages claim from any alleged interference that Mr. Powell may have caused.

Ms. Huffman does not have a claim for lost wages or losses resulting from termination since the District did in fact extend her contract in February. So regardless of the veracity of Ms. Huffman's allegations against Mr. Powell for interference with her employment contract with the District, the contract itself was not harmed. Rather, it was renewed.

Furthermore, Ms. Huffman alleges that she missed work and suffered emotional damages as a result of Mr. Powell's harassment. Even if this is true, the Oregon Supreme Court has held that such injuries cannot support a damages claim under this tort. *Franklin v. Portland Cmty. Coll.*, 787 P.2d 489, 491 (Or. 1990).  Therefore, I grant summary judgment for Mr. Powell on this count.

## VIII.   Breach of Contract

Summary judgment is appropriate for the District for this count. Ms. Huffman alleges that Mr. Powell violated her union contract by forgoing grievance procedures embedded therein. (Compl. [1] at 10). If Ms. Huffman did not exhaust those procedures, Oregon law forbids a claim for breach of contract. When an employee fails to utilize contractual procedures for grievances and arbitration, "state and federal policy favoring the exclusivity of remedies provided in collective bargaining agreements bars any common law claim for breach of contract, unless plaintiff alleges facts that would establish an exception . . . ." *Richard v. Portland Gen. Elec*, 730 P.2d 578, 579 (Or. Ct. App. 1986). Therefore, to bring a claim for breach of contract, Ms.

Huffman bears the burden of demonstrating that she exhausted grievance procedures in her contract, and if not, which exception applies to her situation. Ms. Huffman has not claimed that all options of her contract were exhausted, nor has she established which, if any, exception she qualifies for. As such, she has not met her burden, and summary judgment is hereby granted for the District on this count.

## CONCLUSION

For the reasons listed above, Defendants' motion for summary judgment is GRANTED for the following claims: Age Discrimination under the ADEA, Harassment theory of Retaliation, Willful Violation of the ADEA, Intentional Infliction of Emotional Distress, Abuse of Process, Intentional Interference with Contractual Relations, and Breach of Contract.

Defendants' motion for summary judgment is DENIED for the following claims: Retaliation under the ADEA for the Plans of Assistance and Fraudulent Performance Evaluation, and Age Discrimination under ORS 659A.030.

IT IS SO ORDERED.

DATED this __28__ day of July, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge